IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES ALPHONZO REID, #332-888,    *
#178-7103
                                       *
Plaintiff
                                       *
v                                         Civil Action No. RDB-17-889
                                       *

SECRETARY, DEPARTMENT OF PUBLIC   *
  SAFETY AND CORRECTIONAL
  SERVICES,                          *
I.G.O. No. 20161675,[1]
G. ULLERY, and                 *
J. YAILDER
                                       *
Defendants
                                  ***

## MEMORANDUM OPINION

Self-represented Plaintiff James Alphonzo Reid is incarcerated at North Branch Correctional Institution in Cumberland, Maryland. Pending is his Complaint filed pursuant to 42 U.S.C. §1983, which presents Eighth and Fourteenth Amendment claims. (Complaint, ECF No. 1). Defendants, the Secretary of Department of Public Safety and Correctional Services ("Secretary of the DPSCS"), Correctional Officer II Gordon Ullery and Correctional Officer II John Yailder, by their counsel, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint or, in the alternative, move pursuant to Fed. R. Civ. P. 56 for Summary Judgment. (ECF No. 16). Reid has filed a Response in opposition. (ECF No. 26). Also pending is Reid's Motion to Subpoena Video Footage. (ECF No. 25).

---

[1] Service has not been obtained on, nor is there mention of Defendant I.G.O. No. 20161675 in the body of the Complaint. Defendant I.G.O. No. 20161675, a decision of the Inmate Grievance Office ("IGO"), (ECF No. 1-5) is neither a "person" nor governmental entity amenable to suit under §1983. 42 U.S.C. § 1983; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989); *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 690 (1978). This Court will dismiss Defendant I.G.O. No. 20161675.

Having considered the pleadings and supporting documents, this Court finds a hearing is unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Motion to Subpoena Video Footage IS DENIED. Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 16) IS GRANTED.

## PLAINTIFF'S CLAIMS

Reid presents claims arising from his stabbing on June 21, 2016, and seeks damages in the amount of $350,000. (ECF No. 1). Reid describes the stabbing incident as follows. He was eating his dinner in prison chow hall #1, when a security code was called. Officers Ullery and Yailder, who were supervising the chow hall, "ran out to assist the code." ECF No. 3. Ullery and Yailder left the chow hall and closed the doors for about five minutes. Ullery and Yailder then returned, opened the doors, and stood outside the chow hall. Reid states that "[o]ut of know where" [sic], another inmate ran up behind Reid and stabbed him in his neck, back, armpits, and arm. *Id.* at 3. "It happened so fast, I jumped up looking to see was there any officer's [sic] that could assist me and there was none, I couldn't see who stabbed me, I could only see a[n] image of the guy that stabbed me in front of me holding a knife...." *Id.* To protect himself, Reid grabbed a meal tray from the table and swung it at his assailant. Reid asserts he stood trying to protect himself for about three minutes. *Id.* at 4. As Reid and his attacker stood on opposite sides of a dining table, "[t]he officer with the glasses ran behind me and told me to get down on the chow hall #1 floor [while] the man that stabbed [me] was standing there with a knife in his hand." *Id.* at 4. Reid remained standing because he was afraid the inmate with the knife would continue the attack. *Id.* at 4. Reid maintains he raised his hands in the air and slowly turned around while explaining to the officers that he was the stabbing victim. *Id.* When Reed turned around, the officer "with the glasses," who he identifies as Ullery, sprayed his face with pepper

2

spray. *Id.* at 4, 7.

Reid claims Ullery and Yailder should have been in the chow hall supervising the inmates when the attack occurred. ECF No. 5. Reid claims that by using pepper spray on him, Ullery placed him in greater danger because the inmate who stabbed him had not been subdued. *Id.* at 4. Further, Reid avers that had "the administration" placed him and every other member of the Bloods, a prison gang, on administrative segregation after another inmate, Gregory Tilghman and others Blood members were assaulted on June 4, 2016, Reid would not have been stabbed. *Id.* at 6; *see also* Plaintiff's Opposition ECF No. 26 at 12.

Reid claims the officers wrote a "false report" charging him with violating Inmate Rule #102 (assault on inmate) and Rule # 400 (disobeying an order). *Id.* at 5. Pending a hearing on the rule violations, Reid was placed in administrative segregation. *Id.* at 6. Reid claims this placement on administrative segregation constituted cruel and unusual punishment. *Id.* A hearing officer later found Reid not guilty of the charges after determining that he was attacked by inmate Arnold and was the victim of the assault. *Id*; *see also* Inmate Hearing Record, ECF No. 16-3 at 34-36, 38.

## DEFENDANTS' RESPONSE

Defendants' exhibits include declarations executed by Officers Ullery and Yailder, and other verified records including the Serious Incident Report, the Intelligence and Investigative Division ("IID") Report, Use of Force Reports, the Notice of Inmate Rule Violations signed by Reid, and a DVD recording of the incident. ECF 16-1, 16-2, and 16-3. Reid viewed a copy of the DVD on August 3, 2017. Declaration of Randy Durst, Correctional Case Manager, ECF No. 19. In his opposition,[2] Reid claims the DVD recording of the incident was altered. ECF No. 26

---

[2] Reid refers to an affidavit attached to his opposition. (ECF No. 26 at 5). No affidavit was attached. (ECF No. 26-1).

at 8. He avers the video shows the incident out of order. Specifically, Reid asserts the video fails to show the inmates walking in the chow line, the earlier called security code, Ullery and Yailder abandoning their posts in chow hall #1, or Ullery and Yailder returning to the chow hall after the code. *Id.* Reid also disputes Ullery's assertion that he ordered him to stop fighting before he used pepper spray on Reid's face. *Id.* at 9-10.

Defendants' exhibits provide a different account of the June 21, 2016 incident. Officers Ullery and Yailder were in the chow hall when Bobby Arnold and James Reid started fighting. Ullery and Yailder responded immediately. Yailder called to the Master Control Tower over the radio for staff assistance (a "10-10 code" for fighting between inmates). Ullery ordered the inmates to stop fighting, but neither complied. Declaration of Gordon Ullery, ECF 16-2 at 2. Ullery then sprayed Reid, the inmate in the altercation nearest to him. Reid complied, laid on the floor, and was handcuffed. Yailder also was exposed to the pepper spray and left the area. Ullery Decl., *Id.* at 2-3, Declaration of John Yailder, ECF No. 16-2 at 4-5.

Inmate Bobby Arnold refused to stop fighting and started punching inmate Larmar Sampson. Ullery ordered them to stop, but neither inmate complied. Additional corrections officers arrived. IID Report, ECF No. 16-3 at 7. After Yailder deployed pepper spray to Sampson's face, Sampson complied. Another officer administered pepper spray to subdue Bobby Arnold, who was placed in hand restraints. Reid, Sampson, and Arnold were taken to the medical department. Reid was transported later that day to the Maryland Regional Medical Center for treatment of his wounds, and released to the prison infirmary several hours later. ECF No. 16-3 at 45. Reid, Sampson and Arnold were placed in administration segregation pending an adjustment hearing. *Id.* at 5. Reid received a Notice of Inmate Rule Violation on June 21, 2016, charging him with violating Rules 102 and 400. Reid refused to sign for receipt of the Notice.

4

*Id.* at 33. The adjustment hearing was held one month later on July 21, 2016. ECF No. 16-3.

Ullery and Yailder attest to having no advance warning that a fight was going to occur between Reid and Arnold. Further, Ullery and Yailder deny ignoring a threat to Reid or any inmate present during the fight. Ullery states he did not deliberately place Reid in danger and was present from the beginning of the incident to the time it was brought under control by corrections staff. Yailder states that he did not deliberately placed Reid in danger. Yailder was present at the beginning of the altercation until he had to leave the area due to pepper spray exposure. Ullery and Yailder deny filing a false report concerning the incident. ECF No. 16-2 at 2-5.

The dining hall was secured and searched. Correctional staff discovered a homemade weapon: a six inch piece of raw metal that was sharpened to a point at one end with the other end wrapped with gauze and tape. (ECF No. 16-3 at 6, 8). Reid's enemy list contained no known enemies prior to the attack. ECF No. 16-1 at 5. After the stabbing, Arnold was placed on Reid's enemy list. *Id.*

The IID investigation included reviewing the staff reports and video footage of the incident.[3] The ensuing investigation report concluded that correctional staff had acted in accordance with policies and procedures. *Id.* at 33.

## STANDARD OF REVIEW

### I. MOTION TO DISMISS

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

---

[3] All three inmates refused to provide written statements about the incident. ECF No. 16-3 at 40-42.

The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To satisfy Rule 8(a)(2), a complaint need not include "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a plaintiff must plead more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555. A complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Id.* at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court " 'must accept as true all of the factual allegations contained in the complaint' " and must " 'draw all reasonable inferences [from those facts] in favor of the plaintiff.' " *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Further, a pro se plaintiff's pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Alley v. Yadkin County Sheriff Dept.*, No. 17-1249, —— Fed.Appx. ——, 2017 WL 4415771 (4th Cir. Oct. 5, 2017). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## II. MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v.*

6

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). A court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)).

This Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). As this Court has previously explained, a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

This Court is also mindful that Reid is self-represented. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious

7

cases. *See Erickson*, 551 U.S. at 94; *Cruz v. Beto*, 405 U.S. 319 (1972). Liberal construction does not mean, however, that this Court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). To state a claim under § 1983, a plaintiff must: 1) "allege the violation of a right secured by the Constitution and laws of the United States"; and 2) "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Reid asserts Defendants failed to protect him and used excessive against him in violation of his constitutional rights under the Eighth Amendment and wrote a false report against him in violation of his right to Due Process under the Fourteenth Amendment. Defendants counter there was no constitutional violation and assert the Eleventh Amendment and qualified immunity[4] as affirmative defenses.

### I. CLAIMS AGAINST THE SECRETARY OF THE DPSCS

Defendants accurately note the Complaint alleges no facts concerning the Secretary of the DPSCS. Defendants' Memorandum, ECF No. 16-1 at 19. Because the Complaint makes no specific allegations against this Defendant, the claims against the Secretary of the DPSCS will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### II. ELEVENTH AMENDMENT IMMUNITY

---

[4] This Court does not reach Defendants' qualified immunity defense. For reasons to be discussed in this Memorandum Opinion, Reid's allegations do not support a claim of constitutional violation.

8

Defendants assert they are immune from suit for claims for monetary damages brought against them in their official capacity.[5] The Eleventh Amendment bars suit in federal court against a state by its own citizens, absent consent or a valid Congressional abrogation of sovereign immunity. *See Coleman v. Court of Appeals of Maryland,* , 566 U.S. 30, 35 (2012); *Board of Trustees of Univ. of Alabama v. Garett,* 531 U.S. 356, 363 (2001); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100 (1984).

Under the Eleventh Amendment, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989). Therefore, official capacity claims are subject to sovereign immunity under the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 167 (1985); *accord Hafer v. Melo,* 502 U.S. 21, 25 (1991). As the Supreme Court explained in *Graham,* 473 U.S. at 165, "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.,* 436 U.S. 658, 690, n. 55 (1978)) (citations omitted). A suit against a state officer in his official capacity is tantamount to a suit against the state itself. *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985). Therefore, states and their officers, sued in their official capacities, are not "persons" subject to suit for money damages under 42 U.S.C. § 1983. *Will,* 491 U.S. at 71.

The State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts. *See* Md. Code, State Gov't. Art., § 12-201(a). The State has not waived its immunity under the Eleventh Amendment to a suit of this kind in federal court. Defendants

---

[5] Reid does not indicate whether his claims are against Defendants in their official or personal capacities, or both.

9

Ullery and Yailder are correctional officers employed by the State of Maryland. Thus, Reid's claims for monetary damages against Ullery and Yailder in their official capacities are barred.

### III. EIGHTH AMENDMENT CLAIMS

#### A. Excessive Force

Reid claims Ullery's application of pepper spray constituted an excessive use of force. ECF No. 1 at 4, 7. A convicted inmate's claim of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillan*, 503 U.S. 1, 7–9 (1992). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832, (1994); *see also Makdessi v. Fields*, 789 F.3d 126, 133, (4th Cir. 2015). Eighth Amendment liability "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Anderson v. Kingsley*, __ F.3d __, 2017 WL6374138 *3 (December 14, 2017) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).

A prison official's use of force violates an inmate's Eighth Amendment rights when the force is "inconsistent with contemporary standards of decency," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or is "'repugnant to the consciousness of mankind.'" *Wilkins*, 559 U.S. at 38 (citation omitted).

Eighth Amendment analysis asks whether the prison officials "acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury

inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The question is whether the correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than "in a good-faith effort to maintain or restore discipline." *Whitley*, 475 U.S. at 320–21 (internal quotation marks omitted). To satisfy the subjective component, a claimant must show that a prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In determining whether prison officials have acted maliciously and sadistically, a court should balance: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the responsible officials, and; 4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844 (1994).

When reviewing an excessive force claim involving the use of pepper spray or mace, "it is necessary to examine the totality of the circumstances, including provocation, the amount of gas used, and the purpose for which the gas is used to determine the validity of the use of tear gas in the prison environment." *Williams*, 77 F.3d at 756 (quoting *Slackan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). The use of pepper spray or tear gas in correctional facilities is "closely scrutinized" because such chemicals have "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Id.* Pepper spray or mace is constitutionally permitted in small quantities to "control a recalcitrant inmate." *Williams*. 77 F.3d at 763 (quoting *Landman v. Peyton*. 370 F.2d 135, 138. n.2 (4th Cir. 1966) (internal quotation marks omitted)). Because "limited use" of pepper spray or mace "constitutes a relatively 'mild' response compared to other forms of force, the initial application of mace

11

indicates a 'tempered' response by the prison officials." *Id.*

Courts have recognized "three general areas . . . [where the] use of pepper spray or other chemical agents may constitute excessive force in violation of the Eighth Amendment." *Pevia v. Shearin*. 2015 WL 629001 at *10 (D. Md. Feb. 10, 2015) (citing *Wilkins*, 559 U.S. at 37) (internal alterations omitted). First, an Eighth Amendment violation has been recognized "when an officer used far more than a reasonable quantity of a chemical agent. Second, a violation has been found where pepper spray was used without a prior verbal command. Third, courts have found an Eighth Amendment violation when officers pepper sprayed an inmate and then withheld medical treatment. *Id.* After reviewing the pleading and exhibits, including Reid's allegations, the IID report, correctional staff reports, and the video recording of the incident, this Court concludes that none of these circumstances are presented here.

Contrary to Reid's assertions, there are no apparent edits or alterations to the DVD.[6] Consequently, Reid's Motion to Subpoena Video Footage will be denied. The DVD captures the time leading up to the altercation until calm was restored in the chow hall. ECF No. 16-1 n. 2. The DVD records the dining hall from two different angles, showing numerous inmates eating their dinner in the dining hall at approximately 5:19 p.m. Of import here, the recording clearly shows there were two officers in the dining hall at the time the fight started. The recording shows Bobby Arnold suddenly running up behind Reid, who is seated at a table. Arnold stabs and hits Reid, who runs, falls to the ground, and then stands to defend himself. Reid throws a meal tray. Importantly, the video recording fails to corroborate Reid's assertion that he slowly turned with his hands in the air while explaining to Ullery that he was the victim. The recording shows Ullery deploying one short burst of spray to Reid, the inmate closest to him, and Reid falls

---

[6] There is no audio on the DVD. The DVD does not specifically identify the Officer or the combatants. This Court presumes the officers are Defendants Ullery and Yailder, the inmate attacked from behind is Reid, his attacker is Arnold, who is subsequently seen fighting with Sampson.

to the ground. While Reid is on the ground, two other inmates, Arnold and Sampson can be seen fighting. Correctional officers then deploy pepper spray in the direction of Arnold and Sampson and the fighting stops. Less than three minutes elapse on the recording between the time Arnold attacks Reid and order is restored.

The DVD shows numerous unrestrained inmates, two officers, and many tables and chairs in the chow hall. It is obvious that the altercation between Reid and Arnold immediately created a volatile and dangerous situation for not only the combatants, but also other inmates, and officers. Defendants attest that Yailder called for assistance while Ullery ordered the inmates to cease fighting, albeit without success and without Reid's initial compliance. The DVD shows Ullery applied one short burst of pepper spray to secure Reid's compliance. Arnold launched no further attacks on Reid. As soon the situation was brought under control, correctional staff escorted Reid for medical attention. There is no evidence the pepper spray was applied with malicious or sadistic intent to cause harm to Reid in violation of the Eighth Amendment; rather a brief, tempered use of force was employed to gain control over the situation and restore safety and security.

Even if Reid had submitted an affidavit with his Opposition, his assertions in the Complaint are refuted directly by the video footage of the incident. *See Witt v. West Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (stating that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury would believe it, a court should not adopt [the plaintiff's] version of the facts for purposes of ruling on a motion for summary judgment.'") (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). For these reasons, this Court finds Ullery is entitled to summary judgment in his favor as a matter of law.

## B. FAILURE TO PROTECT

To prevail on an Eighth Amendment claim of failure to protect from violence, an inmate must establish that correctional officers exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto,* 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer,* 511 U.S. at 833-34 (citations omitted).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh,* 817 F.3d 123, 127 (4th Cir. 2016), citing *Farmer,* 511 U.S. at 832. Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety." *Makdessi,* 789 F.3d at 133. A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor,* 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry,* 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney,* 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of

the injury suffered precludes summary judgment. *Raynor,* 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer,* 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor,* 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. For example, in *Winfield v. Bass,* the United States Court of Appeals for the Fourth Circuit held that correctional officers respond reasonably if, when an inmate begins attacking another, the correctional officers present "began immediate preparations to safely intervene" as soon as they became aware of the risk, such as radioing for assistance instantly. 106 F.3d. 525, 532 (4th Cir. 1999). However, failure to take any action in an ongoing assault can amount to deliberate indifference. *See id.*

Defendants do not controvert the seriousness of Reid's injuries. Thus, the issue is whether Ullery and Yailder had actual knowledge of an excessive risk to Reid's safety or they were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and drew the inference. Ullery and Yailder state in their declarations that they had no knowledge or forewarning of any threat to Reid or any other inmate. They deny knowing of or ignoring any threats to Reid or deliberately placing him in danger. As documented in the

DVD, Ullery and Yailder were present in the chow hall when the assault on Reid started.[7] They acted quickly to restore order by calling for assistance. After Ullery's order to stop fighting was ignored, he applied a tempered amount of pepper spray to Reid. Reid was not further endangered by Arnold, as he too was quickly restrained by correctional officers.

Defendants note that Reid's enemy list prior to the incident showed no known enemies. Reid counters that Defendants should have placed him as well as other Blood members on administrative segregation in light of other incidents involving Bloods at NBCI. Reid's speculative and conclusory assertion fails to allege facts that Ullery or Yailder were aware that Reid was a Blood, knew of the other incidents alleged and the purported risk to Reid, and acted with deliberate indifference in this regard. Notably, Reid does not allege that he ever requested to be placed in protective custody in light of these incidents. Reid provides no information attributing to Ullery or Yailder even the knowledge that he was a member of the Bloods or that Bloods were at substantial risk of serious harm. Further, Reid does not allege that Ullery and Yailder were privy to such information, authorized to "round up every known Blood member" to place them in administrative segregation for protection, or whether such a proposed solution was even practicable. ECF No. 1 at 6. Failing to separately house inmates of different gang affiliations does not amount to deliberate indifference. *See Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (noting "the number of gang member housed [in the prison] and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs); *see also Bell v Wolfish*, 441 U.S. 520, 547 (1979) (observing prison administrators should be accorded wide deference in execution of

---

[7] Even if Ullery and Yailder had not been present in the chow hall when the assault began, the claim against them would, at most, be a claim of negligence given the absence of any evidence they had reason to know Reid would be the target of a violent assault if they left the chow hall. Negligence is not enough to establish a constitutional violation and to the extent Reid raises such a claim here, it is dismissed without prejudice.

practices that in their judgment are needed preserve order, discipline, and maintain institutional security). Even when the facts are viewed in the light most favorable to Reid, this Court concludes there is no genuine dispute of material fact regarding whether Defendants' actions amounted to a constitutional violation. Defendants are entitled to summary judgment in their favor as to this claim.

## IV. DUE PROCESS

Reid claims Defendants wrote a false report against him for violating prison rules, causing his placement on administrative segregation while awaiting his adjustment hearing. Ullery and Yailder deny falsifying reports.

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." However, to bring a due process claim, a plaintiff must first show the existence of a protected property or liberty interest. *See Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Prisoners do have a liberty interest in actions that cause loss of good time credits or lengthen their term of incarceration. *Sandin v. Conner*, 515 U.S. 472, 477–79 (1995)). As he was acquitted of the prison rule charges against him, Reid lost no good conduct credits. Thus, no liberty interest was implicated to trigger due process

protections.

Although a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), "there are exceptions to this rule." *Cole v. Holloway*, 631 Fed. Appx. 185, 186 (4th Cir. 2016) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (holding that a disciplinary charge may be actionable under § 1983 if retaliatory)). Notably, Reid's claim does not allege Defendants wrote the report with retaliatory animus.

In *Sandin*, the Supreme Court instructed that in the ordinary course of prison regulation and discipline, rights implicated by the Due Process Clause are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Assignment to disciplinary segregation, alone, does not impose an atypical or significant hardship giving rise to due process concerns. *Beverati v. Smith*, 120 F.3d 500, 503–04 (4th Cir. 1997) (observing "although the conditions [in administrative segregation] were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."). Nothing in the record or pleadings suggests that Reid's thirty-day placement on administrative segregation pending a disciplinary hearing subjected him to atypical hardship as contemplated by *Sandin* or *Beverati*.[8]

Further, prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *See Wolff v.*

---

[8] It is ironic that Reid's failure to protect claim alleges that he should have been placed in administrative segregation for his protection.

*McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, as was the case for Reid, an inmate is entitled to certain due process protections: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66. 592. Reid does not claim, nor does the record support, that he was deprived of these substantive due process protections. Reid received notice and a hearing at which he was provided the opportunity to present evidence. The fact that the hearing officer determined him not guilty of rule offenses does not equate with the proposition that the officers' reports were falsified. There is no genuine dispute of material fact as to this claim. Defendants are entitled to summary judgment in their favor.

## CONCLUSION

For the reasons stated in this Memorandum Opinion, I will DENY Plaintiff's Motion to Subpoena Video Footage and GRANT Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. A separate Order follows.

December *19*, 2017

_____
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE